UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JOSEPH E. BROOKS,

                Plaintiff,

- against -

MACY'S, INC.,

                Defendant.

-----------------------------------------------------------X

**10 CIV 5304**

Civ. ___

**COMPLAINT**

**JUDGE JONES**

RECEIVED
JUL 13 2010
U.S.D.C. S.D.N.Y.
CASHIERS

Joseph E. Brooks, by his counsel, Morrison Cohen LLP, and as for his Complaint against defendant Macy's Inc. alleges as follows:

## PRELIMINARY STATEMENT

1. Joseph E. Brooks is currently 82 years old. Since 1983, Mr. Brooks, his wife and, while they were eligible, their dependents have enjoyed the benefits of a generous executive medical insurance program (the "Plan") that was implemented in mid 1983 while Mr. Brooks was the Chairman and Chief Executive Officer of Lord & Taylor, then owned by Associated Dry Goods Corporation ("ADG"). Under that Plan, Mr. Brooks, his wife and his eligible dependents have for 26 years received extensive medical benefits and comprehensive reimbursement for any expense they incurred that related to health or wellness. For 26 years, through the end of 2009, Mr. Brooks was fully reimbursed, without question or comment, for every medical and ancillary expense he submitted.

2. Now, several mergers and more than 26 years later, the Defendant, Macy's, Inc. ("Macy's"), seeks to dramatically curtail the scope of the Plan at the very moment that Mr. and Mrs. Brooks' advancing age demands increased and costly medical care. Beginning

#2342548 v8 \021836 \0001

in late 2009, Macy's, for the first time and unilaterally, departed from its long standing practice of reimbursing Mr. and Mrs. Brooks for the full cost of their medical and ancillary needs and notified Mr. and Mrs. Brooks that reimbursement of future claims would be judged under different, and much more stringent, standards than those which applied for the previous 26 years. With no support in any Plan documentation and in the face of an express covenant by ADG's successor not to amend or terminate the Plan, Macy's has implemented rules and procedures drastically limiting the expenses Mr. and Mrs. Brooks may recover. Macy's action violates the Employee Retirement Income Security Act of 1974, as amended §§ 1001 *et seq.* and state law, as substantiated herein, in addition to the Plan documentation.

## JURISDICTION

3. Jurisdiction of the subject matter of this Complaint is predicated upon Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(e)(1).

4. Jurisdiction over the state law causes of action alleged in this Complaint is predicated upon 28 U.S.C. §1367.

5. Venue of this action is properly laid in the Southern District of New York pursuant to ERISA § 502(e)(2) because Macy's either resides or may be found in this jurisdiction, and pursuant to Section 1391 (b) of the United States Judicial Code, 28 U.S.C. § 1391(b).

## THE PARTIES

6. Joseph E. Brooks is a resident of Greenwich, Connecticut.

#2342548 v8 \021836 \0001

2

7. Macy's is Delaware corporation with a place of business located in New York, New York.

8. Since 2005, Macy's has been the Plan sponsor, as that term is defined under ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B). Macy's is a fiduciary with respect to the Plan under ERISA § 3(21)(A); 29 U.S.C. § 1002(21) (A).

## BACKGROUND

9. From 1975 through 1986, Mr. Brooks was Chairman and Chief Executive Officer of Lord & Taylor.

10. Lord & Taylor enjoyed enormous growth under Mr. Brooks' leadership. Its sales increased fourfold and the number of Lord & Taylor stores increased from 19 to 46.

11. As part of his employment arrangements and in recognition of the tremendous contributions he made to Lord & Taylor, Mr. Brooks was promised total medical benefits under the Plan.

12. ADG established the Plan for the purpose of providing eligible employees and their dependents with certain benefits, including but not limited to medical, surgical and hospital care benefits and benefits in the event of sickness, accident or disability. The Plan is accordingly an "employee welfare benefit plan" within the meaning of ERISA § 3(1) and is subject to Title I of ERISA, including the Fiduciary Responsibility provisions under Part 4 of Title I and the Administration and Enforcement provisions under Part 5 of Title I.

13. The purpose of the generous benefits offered by the Plan was set forth in a

#2342548 v8 \021836 \0001

June 1, 1983 letter to Mr. Brooks from William P. Arnold, the Chairman and Chief Executive Officer of ADG (the "June 1, 1983 Letter"), which stated that ADG sought to provide "great comfort to executives knowing that their medical costs are fully reimbursed by the Corporation."

14. The June 1, 1983 Letter set forth the following pre-conditions to coverage:

- retirement at age 55 or older;
- completion of 10 years of service with the Company;
- receipt of retirement benefits pursuant to the Company's retirement plan or an employee contract;
- the executive does not engage in full-time employment with another company or firm; in the event of any such full-time employment, participation in the Plan will cease but may be reestablished upon the termination of such full-time employment;
- the application of this policy shall extend to any qualifying officer who retires after July 1, 1983.

15. Mr. Brooks satisfied all of these requirements.

16. In 1986, Lord & Taylor's parent, ADG, merged with the May Department Stores Corporation ("May"). Pursuant to the terms of that Merger Agreement, May agreed that the Plan, among other plans, would be honored and that it would not be subject to amendment or termination:

> Purchaser hereby agrees to honor, and to cause the Surviving Corporation and its subsidiaries to honor, without modification all contracts, agreements, arrangements, policies and commitments of the Company (or any of its subsidiaries) in effect prior to June 20, 1986 (or otherwise disclosed in writing or furnished to Purchaser on or prior to the date hereof) which are applicable to any employee or former employee or any director or former director of the Company (or any of its subsidiaries). Purchaser hereby agrees to honor certain proposed

#2342548 v8 \021836 \0001

4

modifications to certain of such arrangements, policies and commitments, as disclosed in writing to Purchaser on or prior to the date hereof.

17. This provision was intended by all parties to be a lifetime guarantee, without change, of all benefits to which Mr. Brooks, and other ADG directors and executives, were entitled.

18. The document entitled "Joseph E. Brooks Executive Medical Plan" states:

- Mr. Brooks, as an ADG covered executive, is entitled to reimbursement of the full amount of <u>any</u> medical and dental expenses incurred by himself, his spouse and eligible dependent children (emphasis added);

- medical and dental expenses include amounts paid for "the diagnosis, cure, mitigation, treatment or prevention of disease," such as, without limitation, prescribed medicines and drugs, eyeglasses, elastic stockings, hearing aids and orthodontic braces;

- reimbursement is limited to expenses which are not reimbursable under any insurance or disability plan funded by the United States or any state (i.e., Medicare).

19. The Joseph E. Brooks Executive Medical Plan document contains no provision that: reserves the right to modify or terminate the Plan; specifies any particular criteria as pre-requisites for reimbursement; imposes the oversight or review of a third party to determine medical or financial necessity; limits the plan to tax deductible medical expenses; imposes lifetime or other caps on amounts reimbursed; or otherwise restricts the comprehensiveness of the coverage.

20. Consistent with the Joseph E. Brooks Executive Medical Plan document, the Plan sponsor -- first ADG, then Mays and ultimately Macy's -- has, without exception for the 26-year period ending in 2009, paid "the full amount of any medical and dental expenses." For

#2342548 v8 \021836 \0001

example, while employed at ADG, Mr. Brooks saw any doctor of his choice, and ADG consistently reimbursed him for all expenses, including the flight, car service, meals and first class accommodations for Mr. Brooks and a travel companion, if needed.

21. In March 1992, Mr. Brooks had a conversation with Howard Falberg concerning the scope of the Plan. Mr. Falberg was the Vice President of May (and former Vice President at ADG) in Human Resources who administered the Plan. Mr. Brooks summarized the conversation in a March 16 letter to his lawyer, with a copy to Mr. Falberg. In his letter, Mr. Brooks wrote: "The ADG benefits, as Howard stated, were for me and my wife for life, paid at 100 percent, and all-inclusive. There were no exceptions. The plan was designed to ensure that whatever my wife or myself needed or wanted would be covered ... it included everything—including transportation and plastic surgery, if so desired." Mr. Brooks closed by stating: "Please let me know if you and Howard would like to add anything to the letter." Mr. Falberg did not respond to the letter or contradict Mr. Brooks' understanding of the Plan.

22. Other correspondence in 1993 from Joseph Schumm, Senior Vice President at ADG to Arthur F. O'Day, Vice President of Real Estate at ADG stated:

> My recollection is that there was no limitation on the medical benefits for the senior executives. We ran the expenses through the Connecticut General policy for employees as a convenience, but the intent was not to limit executive coverage.

23. The Plan is silent with respect to a procedure for evaluating claims or limiting the expenses that must be reimbursed. The Plan is also silent with respect to any process for appealing the denial of a claim. And Macy's has provided no summary of the Plan to Mr.

#2342548 v8 \021836 \0001

Brooks.

24. Pursuant to Employee Benefits Security Administration Regulation §2560.503-1, because there is no claims procedure, Mr. Brooks is deemed to have exhausted the administrative remedies available under the Plan and is therefore entitled to pursue this action pursuant to ERISA §502, 29 U.S.C. §1132(a).

25. The principal evidence of the scope of the Plan, in addition to the above-referenced letters, is the 26 year history of full, and unchallenged, reimbursement of any expenses submitted by Mr. and Mrs. Brooks.

26. Upon the merger between May and Federated Department Stores in 2005, Mr. Brooks received a letter from Richard A. Brickson, Secretary and Senior Counsel to May that recognized Mr. Brooks' (a) "unique" circumstances and (b) that his "current retirement benefits are protected by specific language in the merger agreement, and in many cases, in the terms of the benefit plans themselves." The letter further stated:

> that you and your eligible dependants shall continue to receive the same level of benefits as are currently provided to you under your special arrangement.

The letter closed by stating:

> We are pleased that your benefits will be continued under the protection provided in the merger agreement.

27. No document or provision gives the Plan sponsor the right to amend, modify or terminate the Plan.

**MR. BROOKS' MEDICAL HISTORY**

28. Mr. Brooks' and his wife's medical expenses have been fully reimbursed,

first by ADG, then by May, then by Federated and now by Macy's (the successor to Federated). In each case, every expense, including any ancillary costs of travel, accommodations, a companion, cars and meals, has been reimbursed in full. Indeed, for expenses that were not tax deductible, Macy's and its predecessors paid Mr. Brooks a full tax gross-up, and filed Internal Revenue Service Forms W-2.

29. Mr. Brooks' expenses have included, among other things:

- Doctor's visits;
- Hospitalizations;
- Travel to doctor's appointments and hospitalization, lodging and meals associated with such visits;
- Tests;
- Medications;
- Laboratory expenses;
- gym memberships;
- vitamins;
- massages;
- first class transportation and accommodations to the Mayo Clinic for Mr. Brooks and a travel companion;
- treatment at the Duke Diet & Fitness Center, including airfare, first class lodging, meals for Mr. Brooks and his personal aide for sixteen (16) days;
- dental care;
- elective procedures.

30. In late 2009, due to the multiple chronic and debilitating medical conditions from which Mr. Brooks suffers, his personal physician of eleven years prescribed

#2342548 v8 \021836 \0001

twenty-four hours a day, seven days a week, care for Mr. Brooks from a home health care attendant (an "HHA"). This prescription was necessitated by medical conditions that impact Mr. Brooks' heart, breathing, balance, blood and knees.

31. Mr. Brooks takes sixteen separate medications and sees many doctors a month for his various medical conditions.

32. Mr. Brooks submitted a notice dated December 7, 2009 to Deena Madison, a CIGNA employee, and Mary Wilson, with a copy to Sara Ottoway, both Macy's employees responsible for administering the Plan, notifying Macy's of his doctor's prescription for an HHA, seeking reimbursement, and advising that he intended to fill the position by January 1, 2010.

33. Mr. Brooks hired the HHA on or about February 15, 2010 and submitted a claim for reimbursement for the HHA and other expenses on or about March 5, 2010 (the "March 5 Claims").

34. Between March 5 and April 9, 2010, Sarah Ottoway, another Macy's employee charged with administering the Plan, apologized on at least five occasions for Macy's delay in processing the March 5 Claims for reimbursement.

35. On or about April 9, 2010, Stephen Von Wahlde, Vice President, Law and Retirement Benefits at Macy's, advised Mr. Brooks by letter (the "April 9 Letter") that his claim for reimbursement for the HHA was denied. Mr. Von Wahlde's letter reviewed various extrinsic sources as well as the Internal Revenue Code ("IRC") and concluded that the intent of the Plan was to exclude any expenses that are not deductible in accordance with IRC section 213(d) –

#2342548 v8 \021836 \0001

9

despite the long history of not only paying, but grossing up, non-deductible expenses. Mr. Von Wahlde then invited Mr. Brooks to provide any documentation relating to the Plan that he might have, in an apparent concession that Macy's lacks Plan documentation. Mr. Von Wahlde then unilaterally imposed a requirement that, to be reimbursable, expenses must be "reasonable and necessary from both a medical and financial standpoint. This may include independent review of claims for reimbursement by Macy's' third party adjudicator and/or independent medical examination."

36.     By letter dated April 26, 2010 from Mr. Von Wahlde and again, on April 28, 2010 by email from Sarah Ottaway, Macy's advised Mr. Brooks that Macy's had changed its position and now intended to suspend reimbursement for any claim that did not meet the criteria for reimbursement of Macy's current insurer (CIGNA).

37.     Subsequently, on or about April 30, 2010, Macy's again changed its position and agreed to reimburse Mr. Brooks "for claims that Macy's has historically paid." Macy's continued however, to refuse to pay the expenses of Mr. Brooks' HHA.

38.     In late May, 2010, Macy's again changed its position and is now refusing to cover any of the following claims, all of which it has always paid without question:

- premiums for Medicare.
- Non-FDA prescription drugs (e.g., dietary supplements, vitamins, etc.).
- Cosmetic services (surgery, medication, injections, creams and the like).
- Gym memberships/personal trainers.

- Massages.

- Travel for medical treatment unless deemed necessary; lodging exceeding $50 per person/per day (2 individuals maximum); meals during such travel.

- Medication therapy or treatment intended primarily to improve or maintain general physical condition which is provided after the resolution of an acute medical condition, and/or when significant therapeutic improvement is not expected.

39. Macy's currently refuses to reimburse expenses related to Mr. Brooks' HHA "to the extent it represents custodial care". "Home health care services of a nurse or other practitioner will be covered to the extent they represent nursing services (dispensing drugs, changing dressings, assisting with activities of daily living) only if medically necessary, not to exceed 16 hours per day."

40. Macy's has, in addition, imposed a new condition, never applied during the prior 26 years: "With respect to those services listed above that require certification that the treatment or service is required for a specific medical condition, I suggest we prepare a form that may be submitted on Mr. Brook's behalf. Macy's reserves the right to have the treatment reviewed by its third party for determination of medical necessity."

41. Macy's dramatic departure from the reimbursement policy that had been applied without question for nearly 27 years has caused and continues to cause Mr. and Mrs. Brooks tremendous stress. Both are advancing in age and require increased medical care on a daily basis. While Mr. Brooks may have formerly been in a position to negotiate for additional medical benefits upon his retirement either from Lord & Taylor or a subsequent employer, he is certainly in no position to do so now. Macy's' unilateral and unjustified curtailment of the Plan

#2342548 v8 \021836 \0001

is a violation of law, a breach of contract, and a breach of faith.

## COUNT I
### (Claim For Benefits Under §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B))

42. Mr. Brooks repeats and realleges paragraphs 1 through 41 as if more fully set forth herein.

43. Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Mr. Brooks is entitled "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the Plan or to clarify his rights to future benefits under the terms of the plan."

44. Each and every claim for reimbursement submitted by Mr. Brooks for the last 27 years has been approved and paid, without question or comment, by Macy's and its predecessor Plan sponsors.

45. Documentary evidence confirms that the Plan encompasses coverage for any expense -- direct or ancillary -- relating to health and wellness, whether elective or otherwise.

46. The nearly 27 year history of claim reimbursement also confirms the generous scope of the Plan.

47. Macy's seeks to limit Mr. Brooks' benefits, to deny reimbursement for claims that are not tax-deductible, and to reserve the right to have a third party evaluate the medical and financial necessity of claims submitted by Mr. and Mrs. Brooks, although each of these conditions is unsupported by Plan documentation or by the parties' long-standing course of conduct.

#2342548 v8 \021836 \0001

48. Macy's' actions in denying Mr. Brooks' claim for an HHA, in limiting reimbursement to IRC §213(d) deductible medical expenses for Mr. Brooks and his wife, and in requiring third party review for medical and financial necessity violate the terms of the Plan.

49. By reason of the foregoing, Mr. Brooks is entitled to reimbursement for medical expenses in an amount to be determined at trial but which to date total in excess of $65,000.00.

50. By reason of the foregoing, Mr. Brooks is entitled to a declaration that Mr. Brooks and his wife shall, pursuant to the Plan, continue to obtain full reimbursement (including full tax gross-up) from Macy's for any and all medical and ancillary expense claims they submit, without arbitrary limitations or curtailments, for the remainder of their lives.

## COUNT II
### (Declaration Pursuant to ERISA §502(a)(3) That Macy's' Attempt to Amend the Plan is Null and Void)

51. Mr. Brooks repeats and realleges paragraphs 1 through 50 as if more fully set forth herein.

52. Mr. Brooks satisfied all conditions precedent for lifetime coverage under the Plan.

53. ADG and Macy's, its successor, were and are obligated to comply with their side of the bargain.

54. Macy's actions in April and May 2010 constitute a prohibited attempt to reduce Mr. Brooks' benefits under the Plan.

55. As a result of the foregoing, Mr. Brooks is entitled to a declaration that

#2342548 v8 \021836 \0001

Macy's' efforts to modify the Plan are null and of no effect.

56. Mr. Brooks seeks a declaration pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) that Macy's' attempted modifications to the Plan violate ERISA and the Plan and are therefore unenforceable.

### COUNT III
### (Breach of Fiduciary Duty Pursuant to ERISA §404, 29 U.S.C. §1104)

57. Mr. Brooks repeats and realleges paragraphs 1 through 56 as if more fully set forth herein.

58. Macy's, and the staff to which it has delegated the administration of the Plan, have strict ERISA fiduciary duties, to *inter alia:* act with undivided loyalty to and solely in the interest of Mr. Brooks as a beneficiary and participant in the Plan; accurately state information about the Plan; refrain from misrepresenting or omitting material information about the Plan; and act in the best interests of Mr. Brooks as beneficiary.

59. Macy's and its employees' fiduciary duties are governed by ERISA §404(a), 29 U.S.C. §1104(a).

60. Macy's and its predecessors managed and administered the Plan and received and approved Mr. and Mrs. Brooks' claims for reimbursement.

61. Macy's and its predecessors reimbursed Mr. Brooks for every medical and ancillary claim he submitted on behalf of himself and his wife.

62. Macy's and its predecessors never denied a claim for reimbursement because it exceeded the limits of the Plan.

#2342548 v8 \021836 \0001

14

63. Both in written communications and in the processing of claims, Macy's and its predecessors represented that Mr. Brooks' benefits extended to all medical and ancillary costs, so long as they pertain to his or his wife's health and well being.

64. Mr. Brooks relied to his detriment on such representations in that he did not negotiate for supplemental medical coverage from any subsequent employer.

65. As a result of Macy's' representation and omissions, Mr. Brooks and his spouse were induced to either act, or fail to act, to their detriment with respect to important personal and family financial decisions. For example, Mr. Brooks did not seek additional or more remunerative employment, nor did he and his wife seek other sources of medical coverage. Mr. and Mrs. Brooks suffered and will suffer substantial financial injury as a result of Macy's' conduct.

66. Macy's either knew, or as a reasonable fiduciary should have foreseen, that its conduct would have these effects on Mr. Brooks and his wife.

67. Macy's' actions and communications were inconsistent with the Plan. By engaging in this conduct and continuing to engage in this conduct, Macy's is administering the Plan for its own benefit rather than for the benefit of Mr. and Mrs. Brooks, contrary to the mandate of ERISA § 404(a). The company thereby committed a continuing violation of Section 404(a) of ERISA, 29 U.S.C. §1104(a), and is liable for all losses that the violation has caused, and will cause, to Mr. and Mrs. Brooks.

68. Pursuant to ERISA §502(a)(3), Mr. Brooks is entitled to injunctive relief as follows:

    a)    The Court declare, adjudge and decree that Macy's violated the strict fiduciary duties, responsibilities, and obligations imposed on it by Section 404 of ERISA, 29 U.S.C. §1104.

    b)    The Court grant relief to redress Macy's' fiduciary violation and to enforce ERISA's strict fiduciary provisions, including (1) enjoining Macy's to restore the benefits that were applicable to Mr. and Mrs. Brooks under the Plan before Macy's' attempt to cut back the Plan; (2) ordering a reformation of the Plan to eliminate and declare invalid any provision purporting to reserve Macy's' right to modify or terminate the Plan; and (3) ordering Macy's to make restitution to Mr. and Mrs. Brooks in an amount equal to the financial burdens and detriments that Macy's has shifted to Mr. and Mrs. Brooks.

## COUNT IV
### (Promissory Estoppel)

69. Mr. Brooks repeats and realleges paragraphs 1 through 68 as if more fully set forth herein.

70. A course of conduct developed, commencing in 1983 and continuing through 2009.

71. Pursuant to that course of conduct, Macy's and its predecessors reimbursed every claim for health and ancillary benefits that Mr. Brooks submitted for almost twenty-seven years, including tax gross-ups for expenses that were not tax deductible.

72. Mr. Brooks reasonably relied on this course of conduct, to his detriment.

73. An injustice will result if Macy's discontinues its longstanding course of conduct. Mr. Brooks will be obligated to bear the costs of his and his wife's medical care at a point in his life where he has no ability to obtain other coverage, and these costs will only increase over time (given the advancing age of himself and his wife).

#2342548 v8 \021836 \0001

74. As a result of the foregoing, Mr. Brooks is entitled to an injunction:

(1) enjoining Macy's to restore the benefits that were applicable to Mr. and Mrs. Brooks under the Plan before Macy's' attempt to modify the Plan; (2) ordering a reformation of the Plan to eliminate and declare invalid any provision purporting to reserve Macy's' right to modify or terminate the Plan; and (3) ordering Macy's to make restitution to Mr. and Mrs. Brooks in an amount equal to the financial burdens and detriments which Macy's shifted to Mr. and Mrs. Brooks, including increased cost obligations.

**COUNT V**
**(Breach of Contract)**

75. Mr. Brooks repeats and realleges paragraphs 1 through 74 as if more fully set forth herein.

76. For almost twenty-seven years, any expenses that related to the health or well-being of Mr. Brooks and his wife were reimbursed by Macy's or its predecessors.

77. Such course of conduct formed a contract between Mr. Brooks, on behalf of himself and his wife, on the one hand, and Macy's or its predecessor, on the other.

78. Mr. Brooks performed all obligations pursuant to such agreement and satisfied all necessary conditions precedent.

79. Macy's breached the terms of this agreement by denying Mr. Brooks' claim for an HHA and for limiting the claims for which he may seek reimbursement to IRC §213(d) deductible claims.

80. As a result of the foregoing, Mr. Brooks has been damaged in an amount to be determined at trial.

WHEREFORE, Mr. Brooks seeks:

1. On the First Count, an Order (a) granting Mr. Brooks full reimbursement of medical expenses, in an amount to be determined at trial but which to date, total at least $65,000.00; (b) declaring that Mr. Brooks and his wife shall continue to obtain reimbursement (including full tax gross-ups) from Macy's for all claims they submit, without any adverse change in the standards or procedures previously employed, for the remainder of their lives; and (c) directing Macy's to promptly reimburse Mr. Brooks for all costs of the HHA that his doctor prescribed.

2. On the Second Count, a declaration pursuant to ERISA§502(a)(3), 29 U.S.C. §1132(a)(3) that Macy's' modifications to the Plan violate ERISA and are therefore unenforceable.

3. On the Third Count, an Order (a) declaring, adjudging and decreeing that Macy's violated the strict fiduciary duties, responsibilities, and obligations imposed on it by Section 404 of ERISA, 29 U.S.C. §1104; and (b) an injunction (1) enjoining Macy's to restore the benefits that were applicable to Mr. and Mrs. Brooks under the Plan before Macy's' attempt to modify the Plan; (2) ordering Macy's to make no further efforts to adversely modify (or terminate) the Plan; and (3) ordering Macy's to make restitution to Mr. and Mrs. Brooks in an amount equal to the financial burdens and detriments that Macy's has wrongfully attempted to shift to Mr. and Mrs. Brooks, including increased cost obligations.

4. On the Fourth Count, an injunction (1) enjoining Macy's to restore the benefits that were applicable to Mr. and Mrs. Brooks under the Plan before Macy's' attempt to modify the Plan; (2) ordering Macy's to make no further efforts to adversely modify (or terminate) the Plan; and (3) ordering Macy's to make restitution to Mr. and Mrs. Brooks in an amount equal to the financial burdens and detriments that Macy's has wrongfully attempted to shift to Mr. and Mrs. Brooks including increased cost obligations.

5. On the Fifth Count, an amount to be determined at trial.

6. For legal fees pursuant to ERISA §502(g), 29 U.S.C. § 1132(g), interest and the costs of suit.

      7.    For such other and further relief as to this Court deems just and proper.

Dated: New York, New York
       July 12, 2010

                                    MORRISON COHEN LLP

                                    By: _____
                                        Danielle C. Lesser
                                        909 Third Avenue
                                        New York, New York  10022
                                        (212) 735-8600

                                    *Attorneys for Plaintiff*

#2342548 v8 \021836 \0001