```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JOSEPH E. BROOKS,                   :

                 Plaintiff,         :   10 Civ. 5304 (BSJ)(HBP)

    -against-                       :   MEMORANDUM OPINION
                                        AND ORDER
MACY'S, INC.                        :

                 Defendant.         :

-----------------------------------X
```

        PITMAN, United States Magistrate Judge:

        I write to resolve several discovery disputes that were left open after the conference held in this matter on April 19, 2011.  This is an ERISA action in which plaintiff alleges that the medical benefits to which he is entitled under his retirement plan have been improperly restricted.  Plaintiff, who is 82 years old, was formerly the Chairman and Chief Executive Officer of Lord & Taylor (Complaint, dated July 12, 2010 (Docket Item 1) ("Compl."), ¶ 1).  He alleges that since 1983, he and his wife have received extensive medical benefits under the plan, including reimbursement for expenses such as doctor's visits, transportation to and from those visits, medication, lab fees and gym memberships (Compl. ¶¶ 1, 29). Plaintiff alleges that all of these expenses were reimbursed without question through the end of 2009 (Compl. ¶ 1).  In addition, plaintiff also received

additional cash payments when such payments were necessary to offset the tax consequences of other payments he received under the plan.

Plaintiff alleges that in late 2009, after several mergers, Macy's, as the successor to Lord & Taylor, began to limit the scope of his benefits under the plan. According to plaintiff, "Macy's . . . departed from its long standing practice of reimbursing Mr. and Mrs. Brooks for the full cost of their medical and ancillary needs and notified Mr. and Mrs. Brooks that reimbursement of future claims would be judged under different, and much more stringent, standards . . ." (Compl. ¶ 2). The present action results from Macy's refusal to reimburse plaintiff for the cost of a live-in home health aide that had been ordered by plaintiff's physician.

The present discovery dispute arises out of defendant's responses to plaintiff's request for the production of documents and interrogatories. The defendant's principal objections are relevance and burden.

Defendant's relevance objection is based on its contention that the only relevant evidence are the materials that the plan administrator considered when it denied plaintiff's claim for benefits. I conclude that the law does not support such a narrow view of relevance in this case.

The pertinent provisions of the plan in issue are as follows:

> All covered . . . executives are provided Executive Medical Plan coverage at no cost to the individual.  [Employer] will pay the executive, upon receipt of copies of the bills, the full amount of any medical and dental expenses, including but not limited to hospitalization and the costs of medicines, incurred by the executive, his spouse and dependent children up to age 19, or in the case of dependent children who are full-time students, up to age 23.
>
> Medical and dental expenses include amounts paid for the diagnosis, cure, mitigation, treatment or prevention of disease.  The cost of prescribed medicine and drugs is included.  Eyeglasses, elastic stockings, hearing aids and orthodontic braces would be included, but toiletries, lotion, toothpaste, brushes and vitamins would be excluded.

At a conference in this matter held on April 19, 2011, defendant conceded, as it had to, that the plan does not does not grant the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan and, therefore, the decision to deny benefits to plaintiff is subject to de novo review.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 293 (2d Cir. 2004).

Central to defendant's relevance argument is the issue of whether the plan language is ambiguous.  If the plan is unambiguous, evidence outside of the four-corners of the document

is irrelevant.  "As a general matter, unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning."  Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 149 (2d Cir. 1999); accord Perreca v. Gluck, 295 F.3d 215, 223 (2d Cir. 2002).  If, on the other hand the plan language is ambiguous, extrinsic evidence is admissible as an aid to interpreting the plan.  Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999); I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Tr. Fund, 136 F.3d 114, 120 (2d Cir. 1998) ("Given that the Plan language is not, by itself, clear and unambiguous . . ., matters outside of the contract terms themselves become relevant.").[1]  Whether contract language is ambiguous is a question of law that is resolved "by reference to the contract alone."  Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 527 (2d Cir. 1990) (citations omitted).  "Language 'is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . ."'"  O'Neil v.

---

[1] Extrinsic evidence cannot, however, be introduced to modify or contradict an express provision of an ERISA plan.  Moore v. Metro. Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988); Hoffman v. Empire Blue Cross & Blue Shield, 96 Civ. 5448 (BSJ), 1999 WL 782518 at *7 (S.D.N.Y. Sept. 30, 1999) (Jones, D.J.).

Ret. Plan for Salaried Emps. of RKO Gen., Inc., 37 F.3d 55, 59 (2d Cir. 1994), quoting Care Travel Co. v. Pan Am. World Airways, 944 F.2d 983, 988 (2d Cir. 1991).

   Because the matter has been referred to me for general pretrial supervision and not to resolve dispositive motions, I need not (and cannot) reach the ultimate issue of whether the plan is actually ambiguous; that will be a matter for Judge Jones to decide.  At this stage, the issue is only whether plaintiff is entitled to discover matters that will be relevant if the plan is found to be ambiguous.  Ordinarily, discovery concerning all relevant or potentially relevant issues is permitted, even if some of the discovery may ultimately prove unnecessary.  For example, a plaintiff alleging that she was wrongfully terminated from her job is permitted to discover the salary and benefits paid to her replacement even though such discovery may prove to be useless if defendant prevails on liability.  Similarly, a plaintiff alleging copyright infringement is ordinarily allowed to discover the alleged infringer's profits even before liability for infringement has been established.  Accordingly, I conclude that plaintiff here is entitled to take discovery concerning evidence extrinsic to the plan that may be relevant to the issue of interpretation so long as it is at least fairly arguable that the plan is ambiguous.  Any other standard would effectively

require plaintiff to prove an aspect of his claim before he could conduct discovery.

Here, it is fairly arguable (at the very least) that the plan is ambiguous. The plan provides coverage for "[m]edical and dental expenses [which] include amounts paid for the diagnosis, cure, mitigation, treatment or prevention of disease." Among the unanswered questions this language presents are (1) does it exclude medical expenses necessitated by conditions that result from accidents as opposed to disease? (2) does it exclude medical expenses necessitated by conditions that are the result of normal aging, and, if so, what conditions are the result of normal aging? (3) are medical expenses limited to expenses incurred as a result of an order by a health care professional? (4) do medical expenses include expenses incurred as a result of a suggestion by a health care professional, e.g., a suggestion by a physician that a patient join a gym and exercise regularly? (5) what are "medical" expenses? (6) does the cost of a home health aide qualify as a medical expense if the aide's services are ordered by a physician to mitigate the effects of a disease? There can be little question that plaintiff has at least a fair argument that the plan is ambiguous.

Defendant's own conduct here also confirms that the plan is ambiguous and that resort to documents outside the plan

document itself is necessary to interpret the plan.  For example, on May 20, 2010, Stephen Von Wahlde, Macy's Vice President of Law & Retirement Benefits sent plaintiff's counsel a three-page, single-spaced letter "in an attempt to reach some clarity regarding Macy's obligation to cover certain expenses."  In the letter, Mr. Von Wahlde refers to (1) a 1986 application for Executive medical insurance, (2) a summary plan description issued by Connecticut General Insurance Company in 1986, (3) ADG Board Minutes from May 1983 and (4) Section 213(d) of the Internal Revenue Code.  The face of the plan does not refer to any of these documents.  Mr. Von Wahlde goes on in his letter to propose certain limitations on benefits which are not clearly set forth in the plan and states:

> Mr. Segal, I believe the above is consistent with the original intent of the Plan, as can be determined from the documents that we have.  It is consistent with a plan summary that was provided to Mr. Brooks in 2007 from CIGNA.  It is also consistent with the treatment of other retired executives of ADG; we have been unable to obtain any documentation to suggest that Mr. Brooks is entitled to something different.

(Letter from Stephen von Wahlde, Esq. to Michael J. Segal, Esq., dated May 20, 2010 and annexed as part of Exhibit A to the Letter to the undesigned from Danielle C. Lesser, Esq., dated April 29, 2011).  This letter is compelling evidence that Macy's regards the plan as ambiguous and believes that resort to extrinsic

7

evidence to interpret the plan is appropriate. If the plan were unambiguous, it is difficult to understand why Macy's counsel would need to write to "reach some clarity" regarding Macy's obligations under the plan. If the plan were unambiguous, it is difficult to understand why Macy's counsel would have to refer to 27-year-old board minutes and other documents to garner "the original intent of the Plan." If the plan were unambiguous, it is difficult to understand why Macy's counsel would be referring to the benefits provided to other participants under the plan as a guidepost for determining the scope of plaintiff's benefits. In short, Macy's own reliance on extrinsic evidence to interpret the plan is compelling evidence that the scope of coverage is not clear from the face of the plan itself.

Where plan language is ambiguous, courts can consider, among other things, "(1) evidence of how the [p]lan has been interpreted by the [p]lan administrators in the past; and (2) who drafted the contract terms." I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Tr. Fund, supra, 136 F.3d at 120. Thus, to the extent plaintiff seeks discovery concerning these items, his requests seek relevant information.

Defendant's second major objection is burden. Through its counsel, defendant proffered the following facts at the conference held in this matter on April 19, 2011. The plan was

8

initially implemented more than twenty years ago when plaintiff was the Chairman and Chief Executive Officer of Lord & Taylor (a chain of department stores) which was then owned by Associated Dry Goods Corporation ("ADG").  Through a number of corporate transactions, the details of which are not relevant here, defendant assumed the obligations of ADG under the plan.  Due to the fact that there have been several obligors under the plan, the plans records, many of which are located in a warehouse in Ohio, are not well organized.  Many of them are in shrink wrapped boxes that are not labeled with precision.  There is no claim by plaintiff and no evidence suggesting that the lack of organized files is the result of bad faith on the part of Macy's.  Rather it appears that the lack of organization had its origins long before this litigation was threatened or commenced and was the result of the documents having gone through the hands of multiple custodians who simply did not have the inclination to prepare an accurate index.  Defendant has not quantified the cost of a thorough search of the files likely to contain responsive documents.

       Although I am sympathetic to defendant's plight, the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents.  <u>Overseas Fashion Indus., Inc. v. River Heights, Inc.</u>, 88 Civ. 2450 (RPP),

1990 U.S. Dist. Lexis 29 at *5 (S.D.N.Y. Jan. 4, 1990) (Dolinger, M.J.) ("[A] party's failure to keep its documents in organized fashion is not ordinarily a basis for excusing production."); Allarcom Ltd. v. Telemundo Grp. Inc., 88 Civ. 9265 (KMW), 1989 U.S. Dist. Lexis 13612 at *3 (S.D.N.Y. Nov. 16, 1989) (Dolinger, M.J.) ("[T]he fact that a party maintains its documents in a manner that makes access more difficult than it otherwise would be cannot serve as an excuse for not producing relevant documents."); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) ("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."); accord Alliance to End Repression v. Rochford, 75 F.R.D. 441, 447 (N.D. Ill. 1977); see also Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 321 n.68 (S.D.N.Y. 2003) (Scheindlin, D.J.).  Thus, to the extent defendant is objecting to producing document on the ground that it would be unduly burdensome to review the documents currently stored in its warehouse, its objection is overruled.

Accordingly, in light of the foregoing discussion, defendant's objections to Document Request Nos. 1-18, 20, 22-24, 26-31, and 35-36 are overruled.  The documents sought in these requests will be relevant as aids to interpretation if Judge

Jones finds the plan language is ambiguous.  Other than burdensomeness, defendant does not object to Document Request Nos. 19, 21 and 32-34.  Defendant's objections to Document Request No. 25 are sustained in part in light of the privacy interests of other plan participants.  Defendant is directed to produce the documents responsive to Request No. 25 but may redact all information that tends to identify the plan participant who received medical benefits.  Defendant's objections to Document Request Nos. 37-39 are sustained; these requests are premature.

For the same reasons, defendant's objections to Plaintiff's Interrogatories 1-2 and 5-21 are overruled.  These interrogatories seek the identification of witnesses who are likely to have testimony relevant to the interpretation of the plan.  Defendant's objections to interrogatories 3 and 4 are sustained.

Defendant is to produce the documents and respond to plaintiff's interrogatories as directed by this Order within thirty (30) days of the date of this Order.  The parties' out

standing dispute concerning documents withheld on the ground of privilege will be addressed in a separate Order.

Dated:  New York, New York
        May 6, 2011

                                        SO ORDERED

                                        _____
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Danielle C. Lesser, Esq.
Howard S. Wolfson, Esq.
Wendy M. Fiel, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, New York  10022-4784

James R. Williams, Esq.
Michael D. Jacobster, Esq.
Ravindra K. Shaw, Esq.
Jackson Lewis LLP
666 Third Avenue
New York, New York  10017